UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **NICK TURSE,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 22-cv-2970 (APM) |
| **U.S. DEPARTMENT OF DEFENSE, et al.** | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**I.**

On March 15, 2019, Plaintiff Nick Turse, an investigative journalist, made a demand under the Freedom of Information Act (FOIA) to the United States Special Operations Command (SOCOM) for "the after action review, including the credibility assessment on potential civil casualties for an incident on 4/1/2018 IVO Buur, Somalia." Defs.' Mot. for Summ. J., ECF No. 24 [hereinafter Defs.' Mot.], Decl. of James C. Boisselle, ECF No. 24-2 [hereinafter Boisselle Decl.], ¶¶ 10–11. The request pertained to a drone strike near El Buur, Somalia, on April 1, 2018, which killed two civilians, a mother and her 4-year-old daughter. *See* Pl.'s Opp'n to Defs.' Mot. & Cross-Mot. for Summ. J., ECF No. 27 [hereinafter Pl.'s Opp'n], at 2–3.

SOCOM conducted a search and identified three responsive records. Boisselle Decl. ¶ 14. It fully redacted Document 1 pursuant to Exemption 1. *Id.* ¶ 15.a. It partially redacted Document 2 (a single Power Point slide) and Document 3 (a 117-page Army Regulation 15-6 Report of Investigation (ROI)) on various grounds, including Exemptions 1, 3, 5, 6, 7(C), and 7(E). *Id.* ¶¶ 15.b, 51. SOCOM referred a single six-page exhibit to the ROI to the Office of the Secretary

of Defense/Joint Staff for further review ("Exhibit").  *Id.* ¶ 15.c; Defs.' Mot., Decl. of Lt. General Alexus G. Grynkewich, ECF No. 24-3 [Grynkewich Decl.], ¶ 6.  That office reviewed the record, released it in part, and asserted Exemptions 1 and 6 as the basis for withholdings.  Grynkewich Dec. ¶ 6.

The parties are now before the court on cross-motions for summary judgment.  *See* Defs.' Mot.; Pl.'s Opp'n.  The actual contested issues are narrow.  Plaintiff expressly states that he does not contest the adequacy of Defendants' searches, the withholding of Document 1 in full, or the invocations of Exemption 3.  Pl.'s Opp'n at 8; Compl., ECF No. 1, ¶ 15.  He also implicitly concedes the withholdings made pursuant to Exemptions 6 and 7(C), as he makes no argument as to them.  *See generally* Pl.'s Opp'n at 8–11; *see Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017) (explaining that a court need not consider on summary judgment the propriety of an uncontested exemption because "there is no case or controversy sufficient to sustain the Court's jurisdiction").  Finally, with respect to Exemption 7(E), Plaintiff refers to it in passing but advances no reason why the invocation is improper.  *See* Pl.'s Opp'n. at 8.  The court is not required to address an argument a party itself has not developed.  *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 593 (D.C. Cir. 2016) (stating that the "court does not consider the merits of such underdeveloped arguments").

That leaves only Exemptions 1 and 5.  But, as explained in the Declaration of James C. Boisselle, SOCOM initially asserted Exemption 5 by itself only as to two sentences on page seven of the ROI.  Boisselle Decl. ¶ 51.  SOCOM later clarified in its Vaughn index that Exemption 1 also applies to those sentences.  *Id.*  So, if Defendants' assertion of Exemption 1 is proper, the court does not need to take up Plaintiff's challenge to Exemption 5.  The court thus turns to assess Defendants' reliance on Exemption 1.

II.

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency bears the burden of proving that it withheld certain materials responsive to a plaintiff's FOIA request pursuant to a statutory exemption. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (internal quotation marks omitted).

III.

Exemption 1 allows the government to withhold matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). "Recognizing that national security is primarily the province of the Executive," the D.C. Circuit has cautioned that courts should not "micromanage agency determinations that such information should remain secret." *Schaerr v. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023). A court is "simply [to] consider whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order." *Id.*

3

Here, Defendants rely on Executive Order 13,526, which authorizes the classification of information at three levels—TOP SECRET, SECRET, and CONFIDENTIAL—depending upon whether release of information would cause, respectively, exceptionally grave damage, serious damage, or damage to national security. *See* Classified National Security Information, Exec. Order No. 13,526 § 1.2(a), 75 Fed. Reg. 707, 707–08 (Jan. 5, 2010) [hereinafter EO 13,526]; Boisselle Decl. ¶ 9. As relevant here, the Executive Order permits classification of the following categories of information: (1) "military plans, weapons systems, or operations," EO 13,526, § 1.4(a); (2) "intelligence activities (including covert action), intelligence sources or methods, or cryptology," *id.*, § 1.4(c); (3) "foreign relations or foreign activities of the United States, including confidential sources," *id.*, § 1.4(d); (4) "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security," *id.*, § 1.4(g); and (5) "[c]ompilations of items of information that are individually unclassified," which "may be classified if the compiled information reveals an additional association or relationship that" both "meets the standards for classification" under the Executive Order and "is not otherwise revealed in the individual items of information," *id.*, § 1.7(e).

Defendants' declarants and their accompanying *Vaughn* indices[1] explain the reasons for classifying and withholding information from the ROI, the associated Exhibit, and the Power Point Slide. The ROI and Slide are both classified at the level of "SECRET//NOFORN," with the latter classification meaning that "the document is not to be distributed to foreign governments, foreign nationals, or foreign organizations." Boisselle Decl. ¶ 25. The ROI and Slide contain information relating to "specific units, assigned teams, objectives, missions; details as to how the mission was

---

[1] "A *Vaughn* Index 'consists of a detailed affidavit, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information' in a FOIA case." *Hall & Assocs. v. EPA*, 956 F.3d 621, 627 n. 2 (D.C. Cir. 2020) (quoting *John Doe Agency v. John Doe Corp.*, 439 U.S. 146, 149 n.2 (1989)).

to be implemented, how it was implemented, what operational protocols were to be followed and specific parameters of the mission to be accomplished, i.e., Tactics, Techniques, and Procedures (TTPs)." *Id.* ¶ 26; *see also id.*, Ex. at 20 (CM/ECF pagination) (*Vaughn* index discussing similar information in Slide). The six-page Exhibit, classified as "SECRET//REL TO USA//FVEY,"[2] "includes operational details such as the mission, tasks, approval level for different operational activities, rules of engagement, caveats placed on approved operational activities, coordination procedures for different operational activities, and command and control mechanisms for the conduct of military operations." Grynkewich Decl. ¶¶ 13, 15. It also includes "intelligence activities, sources, and methods incident to the conduct of military operations," a description of "certain activities intended to take place in foreign countries," and "operational associations and methods for Special Operations Forces (SOF) planning and conduct of operations." *Id.* ¶¶ 16–18.

Both declarants also explain how disclosure of this information potentially would harm national security. Disclosure "would affect how SOF conducts future operations, lessen the effectiveness on intelligence gathering and give the enemy insight into the vulnerabilities of SOF"; "[t]he enemy would be able to circumvent SOF TTPs and protocols for conducting future military operations"; and the "enemy would also be able to ascertain SOF vulnerabilities and exploit those vulnerabilities in future operations." Boisselle Decl. ¶ 26. Furthermore, because the withheld information contains details about military operations, "[t]errorist organizations, violent extremist organizations, or hostile foreign governments could use the information to better plan attacks or evade justice." Grynkewich Decl. ¶ 19. Disclosure would "jeopardize ongoing special operations by potentially giving enemy forces information that would allow them to avoid or counter the

---

[2] "'REL TO USA/FVEY' means the document may only be released in full to appropriately cleared personnel within the "Five Eyes" nations (Australia, Canada, New Zealand, the United Kingdom, and the United States), and may not otherwise be distributed to foreign governments, foreign nationals, or foreign organizations." Grynkewich Decl. ¶ 13.

operational activity in question" and "would allow them to better target U.S. forces for attack." *Id.*

Defendants have adequately justified their withholdings under Exemption 1. Their declarants' representations "have more than plausibly explained why" the withheld information is classified and have offered "credible reasons for classifying this information, including that unauthorized disclosure would damage national security[.]" *Schaerr*, 69 F.4th at 930. Accordingly, the court holds that Defendants properly invoked Exemption 1.

**IV.**

Plaintiff argues that classifying the information at issue was not justified—and therefore the improperly withheld—because it was done for a prohibited purpose under Executive Order 13,526. Pl.'s Opp'n at 8–9. Specifically, Plaintiff contends that the Executive Order bars classification to "conceal violations of law, inefficiency, or administrative error" or to "prevent embarrassment to a person, organization, or agency." EO 13,526, § 1.7(a)(1)–(2); *see* Pl.'s Opp'n at 8. Plaintiff concedes that he must provide more than mere "conjecture" to overcome the presumption that the government has properly applied the classification rules. Pl.'s Opp'n at 8–9 (quoting *Canning v. U.S. Dep't of Justice*, 848 F. Supp. 1037, 1048 (D.D.C. 1994)). So, he points to a series of news articles and public statements, which he claims establish the following facts: (1) the civilian victims—a mother and child—"were easily visually distinguishable from an adult man"; (2) they were killed by a second drone strike as they ran from a pickup truck hit by the initial strike; (3) the drone operators were inexperienced and under time pressure; and (4) the U.S. military failed to acknowledge the civilian deaths for a year. *Id.* at 9; *see also id.* at 2–7. These facts, according to Plaintiff, "provide a solid basis—not foundationless conjecture—that the

6

government has withheld information because it would reveal violations of international or domestic law, error, or information that would cause embarrassment to the military." *Id.* at 9.

The court is unpersuaded. Exemption 1 cannot be defeated simply by surpassing the low bar of offering more than "conjecture." To prevail, a party must present evidence either contradicting the propriety of the classification or evidence of bad faith in making the withholdings. *See Larson*, 565 F.3d at 864 (rejecting challenge to Exemption 1 withholding where the parties presented "no evidence to the contrary or evidence suggesting bad faith on the part of the CIA in withholding" the information). That is a tough hill to climb. Agency declarations asserting Exemption 1 "enjoy 'a presumption of good faith [that] cannot be rebutted by purely speculative claims' of agency malfeasance." *Schaerr*, 69 F.4th at 930 (quoting *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020) (cleaned up)). "This presumption applies with special force in the national security context, where [the court must] give substantial weight to an agency's affidavit and will not second-guess its conclusions even when they are speculative to some extent." *Id.* at 930–31 (internal quotation marks omitted). "If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 864.

Plaintiff here has not overcome the good faith presumption afforded Defendants' declarants. He has done no more than offer links to media stories that raise questions about a drone strike that killed two civilians. *See, e.g.,* Pl.'s Opp'n at 2–3 (citing Nick Turse, *Civilian Harm*, The Intercept, Nov. 12, 2023, available at https://theintercept.com/2023/11/12/somalia-drone-strike-civilian-deaths/) (last visited Feb 24, 2025), and Nick Turse, *The US Military Ignores and Neglects*

7

*the Civilian Victims of Its Air Strikes*, The Nation, Feb. 2, 2024, available at https://www.thenation.com/article/world/somalia-civilian-air-strikes-dodi/ (last visited Feb. 24, 2025)). In fact, one of the articles, *Civilian Harm*, written by Plaintiff himself, relies extensively on declassified information contained within the records released to Plaintiff via FOIA. *See* Turse, *Civilian Harm* (embedding image of disclosed records at issue). That Defendants have disclosed facts causing Plaintiff to question the legality of the drone strike, if anything, supports the good faith of the declarants, not the inference that they are improperly classifying information or are acting in bad faith. *See* Grynkewich Decl. ¶ 12 (expressly stating that information from the Exhibit was not classified to "conceal violations of law" or "to prevent embarrassment to a person, organization, or agency").

Next, Plaintiff contends that Defendants have not carried their burden under the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), to show "how the release of the information would reasonably be expected to cause identifiable damage to national security or law enforcement interests." Pl.'s Reply in Supp of Cross-Mot. for Summ. J., ECF No. 31 [hereinafter Pl.'s Reply], at 2; *see also* Pl.'s Opp'n at 10.[3] But they have. Defendants' declarants both explained how disclosure would have adverse national security consequences. Boisselle Decl. ¶ 26 (stating, among other things, that disclosure would "give the enemy insight into the vulnerabilities of SOF" and that "[t]he enemy would be able to circumvent SOF TTPs and protocols for conducting future military operations"); Grynkewich ¶ 19 (explaining that disclosure would "jeopardize ongoing special operations by potentially giving enemy forces information that would allow them to avoid or counter the operational activity in question" and "put U.S. forces at risk by

---

[3] In his Opposition, Plaintiff cites "Exemption 5" when making this argument, Pl.'s Opp'n at 9–10, but given the context the court presumes that the reference to Exemption 5 is a typographical error and Plaintiff means Exemption 1. *See also* Pl.'s Reply at 2 (discussing the FOIA Improvement Act's foreseeable harm requirement in the context of Exemption 1).

potentially giving enemy forces information that would allow them to better target U.S. forces for attack"). Plaintiff offers no evidence that would call into doubt the good faith presumption afforded these predictions of potential ham.

Finally, Plaintiff invites the court to review the withheld information *in camera*. Pl.'s Opp'n at 10–11. The court declines to do so. *See Larson*, 565 F.3d at 870 (finding summary judgment appropriate without *in camera* review where agency affidavits provide sufficient information to place redactions within Exemption 1, nothing in the record contradicts that information, and there is no evidence of bad faith).

V.

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 24, is granted, and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 27, is denied.

A final, appealable order accompanies this Memorandum Opinion.

Dated:  February 24, 2025

Amit P. Mehta
United States District Court Judge